IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

LYNN ANN MAROOK,

    Plaintiff,

vs.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

    Defendant.

No. C08-0032

ORDER

## TABLE OF CONTENTS

I. PROCEDURAL HISTORY.................................................. 2

II. ISSUE PRESENTED.................................................... 2

III. RELEVANT FACTS................................................... 3
   A.   The Insurance Policy......................................... 3
   B.   The Accident................................................. 4
   C.   The Claim.................................................... 6

IV. DISCUSSION....................................................... 7
   A.   Motion to Compel............................................. 7
       1.   Requested Discovery...................................... 7
           a.   Prior State Farm Cases............................ 7
           b.   Financial Information............................ 10
       2.   Analysis................................................ 11
           a.   Prior State Farm Cases........................... 12
           b.   Financial Information............................ 15
   B.   Motion for Finding of Prima Facia [sic] Case of
       Exemplary Damages........................................... 18

V. ORDER............................................................ 19

This matter comes before the Court on the Motion for Finding of Prima Facia (sic) Case of Exemplary Damages (docket number 22), and the Motion To Compel (docket number 24), both filed by the Plaintiff on May 29, 2009. Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## I. PROCEDURAL HISTORY

On February 25, 2008, Plaintiff Lynn Ann Marook filed a Petition at Law in the Iowa District Court for Linn County, seeking damages against Defendant State Farm Mutual Automobile Insurance Company. The Petition was brought in five counts; alleging breach of contract, promissory estoppel, unjust enrichment, "reasonable expectations," and bad faith. On April 7, 2008, the action was removed to the United States District Court for the Northern District of Iowa. On April 11, 2008, State Farm filed an Answer denying the material allegations and asserting certain affirmative defenses.

On January 14, 2009, Marook filed an Amended Complaint (docket number 13). The Amended Complaint asserts the same causes of action found in the Petition at Law. State Farm filed an Answer (docket number 14) on January 26, 2009. Pursuant to the Scheduling Order submitted by the parties and approved by the Court, the trial ready date is October 31, 2009. A firm trial date has not been established.

On June 23, 2009, State Farm filed a Motion for Partial Summary Judgment (docket number 32). State Farm argues that it is entitled to summary dismissal of Marook's bad faith claim. On June 30, 2009, Marook filed a Motion for Partial Summary Judgment (docket number 33), asserting that she is entitled to summary judgment on her claims of breach of contract (Count I) and bad faith (Count V). The motions for summary judgment remain pending.

## II. ISSUE PRESENTED

On May 29, 2009, Marook filed the instant Motion to Compel. The motion raises primarily two issues: first, whether State Farm is required to provide discovery regarding certain earlier cases; and second, whether State Farm is required to provide additional

discovery regarding its financial condition. In her "Motion For Finding of Prima Facia (sic) Case of Exemplary Damages," Marook asks that the Court "declare that the Plaintiff has made a prima facia (sic) case for exemplary damages and order the Defendant to provide to Plaintiff information about Defendant's financial condition."[1] Accordingly, it would appear that Marook's motion seeking a declaration from the Court regarding a prima facie showing for punitive damages is related to the second issue raised in the motion to compel discovery.

### III. RELEVANT FACTS

#### A. *The Insurance Policy*

Plaintiff Lynn Ann Marook is a resident of Linn County, Iowa. Defendant State Farm Mutual Automobile Insurance Company is an insurance company doing business in Iowa. State Farm issued an automobile insurance policy providing coverage on a 2000 Toyota Sienna owned by Marook. The policy was renewed for a 6-month term on August 18, 2007.

The premium payment of approximately $61.00 per month was automatically withdrawn from Marook's account at the Collins Community Credit Union on around the 23rd day of each month. In August 2007, however, Marook contacted the State Farm Agency servicing her account and advised them not to make a withdrawal on August 23. At her deposition, Marook testified that she told the Agency to stop the automatic withdrawal because she had "difficulty with work to make the payment."[2] According to an entry made in the Agency's computer records, Marook called on August 16 and reported that she "has had some money problems [and] she requested we suspend her

---

[1] *See* "Motion for Finding a Prima Facia (sic) Case of Exemplary Damages" (docket number 22 at 1).

[2] *See* Lynn Marook Dep. 34:14-21, State Farm's App. at 16 (docket number 29-3 at 18).

3

account and she will stop in the office to make her monthly payment."[3] Marook admits that she did not pay the August premium.

On August 29, 2007, State Farm sent Marook a notice stating that the policy would be canceled on September 12, 2007, due to non-payment of the premium. According to an Agency computer entry, Marook stopped in the office on September 18, 2007, and asked if her automatic payments could be "unsuspended" for the September 23, 2007, premium payment. She was told that if she paid the August premium, then they could "unsuspend" her automatic payment for September 23. Marook apparently did not have the money to pay the August premium. According to the Agency computer entry:

> SHE STATED SHE HAS NO MONEY TO DO THAT. SHE
> SAID SHE WILL GET A CHECK HERE BY THE END OF
> THE WEEK. SHE STATED SHE WILL STOP IN ON
> MONDAY SEPTEMBER 24, 2007 TO PAY HER SFPP
> ACCOUNT IN FULL FOR AUG AND SEP.

*See* Agency computer entry, State Farm's App. at 2 (docket number 29-3 at 4) (capitalization in original).

### B. *The Accident*

Two days later, on September 20, 2007, Marook was involved in an automobile accident. Apparently, the 2000 Toyota Sienna being driven by Marook struck a parked car. It is undisputed that the accident was Marook's fault.

While at the scene of the accident, Marook was asked by the investigating officer to produce proof of insurance. The insurance card in Marook's possession reflected an expired date. Accordingly, Marook called Chad Johnson, her State Farm agent. Marook then handed her cell phone to the investigating officer and Johnson told the officer that Marook had insurance.[4] In his deposition, Johnson testified that when he was contacted

---

[3] *See* Agency computer entry, State Farm's App. at 1 (docket number 29-3 at 3).

[4] *See* Lynn Marook Dep. 55:12-57:23, State Farm's App. at 21 (docket (continued...)

4

by the investigating officer on September 20, he looked at the computer, saw that a policy had been issued to Marook, and "confirmed to the police officer, that, yes, we had a policy with Lynn Ann Marook."[5]

Johnson testified, however, that after he got off the phone with the officer, he recalled that Marook "had contacted the office previously and that there were some concerns about her payment."[6] Approximately two hours later, Johnson called Marook and advised her that there was no coverage in force. According to Johnson, Marook was "sad" and asked if "there is anything you can do."[7] Johnson testified he responded as follows:

> I'll see what I can do, but we have--we need to get a payment in order to keep the policy open and work forward, because that was my understanding that that's what I needed to do.

See Chad Johnson Dep. 46:3-7, State Farm's App. at 33 (docket number 29-3 at 35). According to Johnson, however, "I made it very clear that that did not mean that there would be coverage for the loss."[8]

Johnson then drove to Marook's home and obtained a check for $121.00, representing the August and September premium payments. In her deposition, Marook

---

[4](...continued)
number 29-3 at 23).

[5] See Chad Johnson Dep. 33:10-15, State Farm's App. at 29 (docket number 29-3 at 31).

[6] See Chad Johnson Dep. 43:17-24, State Farm's App. at 32 (docket number 29-3 at 34).

[7] See Chad Johnson Dep. 45:17-46:7, State Farm's App. at 32-33 (docket number 29-3 at 34-35).

[8] See Chad Johnson Dep. 46:12-13, State Farm's App. at 33 (docket number 29-3 at 35).

5

testified that Johnson "stated that he would try to get the insurance reinstated," but that "it would not necessarily cover the accident."[9] Johnson returned to his office and issued a receipt for the payment. Johnson also contacted State Farm's claims department, advised them of the accident, and told them that Marook had paid the premium after the accident.

### C. The Claim

On October 3, 2007, State Farm sent Marook a "reinstatement notice," advising her that "[y]our policy is hereby reinstated effective SEP 20 2007 12:01 A.M. Standard Time."[10] (It should be recalled that the accident occurred at approximately 10:30 A.M. on September 20, 2007.) According to Cheri Svehla, a supervisor in State Farm's underwriting department, the reinstatement notice was issued "automatically" because of the premium payment made on September 20.[11]

After investigating the circumstances surrounding the claim, however, State Farm concluded that there was no policy in effect when the accident occurred. In internal e-mails, State Farm acknowledges that "the agent and staff's actions may have caused some confusion for the insured," but nonetheless conclude that a proper notice of cancellation for non-payment of premium had been sent, that the premium was not paid prior to the accident, and that there was no coverage at the time of the loss.[12] Jeff Sanders, a claims adjuster for State Farm, called Marook on October 16, 2007 and told her that there was

---

[9] *See* Lynn Marook Dep. 65:14-66:5, State Farm's App. at 23-24 (docket number 29-3 at 25-26).

[10] *See* Reinstatement Notice, State Farm's App. at 10 (docket number 29-3 at 12).

[11] *See* Cheri Svehla Dep. 39:12-22, State Farm's App. at 40 (docket number 29-3 at 42).

[12] *See* E-mail from Meghan Quinn dated October 15, 2007, State Farm's App. at 11 (docket number 29-3 at 13).

6

no coverage for the loss "due to the fact the policy was not in force at the time of the mva."[13]

While the record is somewhat imprecise, it appears that Marook's payment of $121 was credited toward the premium which accrued prior to the policy being cancelled at 12:01 A.M. on September 12, 2007. The balance was then applied toward the premium which would have accrued after the policy was reinstated at 12:01 A.M. on September 20, 2007, as set forth in the notice of reinstatement. After State Farm determined that the reinstatement date was established "in error," however, Defendant was sent a check for $2.13, representing one day's premium. That is, after review State Farm established the policy reinstatement date as September 21, 2007 at 12:01 A.M.[14] The check for $2.13 was issued at the beginning of December "when the account was being cleaned up," and a check was sent to Marook at that time.[15]

## IV. DISCUSSION

### A. Motion to Compel

#### 1. Requested Discovery

##### a. Prior State Farm Cases

In her motion to compel, Marook asks that the Court "enter an Order compelling the Defendant to fully comply with discovery provisions of the Federal Rules of Civil Procedure." Specifically, Marook objects to State Farm's refusal to respond substantively to her discovery requests regarding three previously-reported cases. The disputed interrogatories are found in Plaintiff's second set of interrogatories:

---

[13] *See* Activity Log by Jeff Sanders, State Farm's App. at 9 (docket number 29-3 at 11).

[14] *See* Cheri Svehla Dep. 30:1-35:19, State Farm's App. at 38-39 (docket number 29-3 at 40-41).

[15] *See* Cheri Svehla Dep. 58:14-25, State Farm's App. at 44 (docket number 29-3 at 46).

**INTERROGATORY NO. 17**: Identify all employees, agents, agents' employees, counsel and parties involved in the claims described in *State Farm Mutual Automobile Ins. Co. v. Bockhorst*, 453 F.2d 533 (10th Cir. 1972); *Van Hulle v. State Farm Mutual Automobile Ins. Co.*, 254 N.E.2d 457 (Ill. 1969); *State Farm Mutual Automobile Ins. Co. v. Anderson*, 318 So.2d 687 (Ala. 1975) (collectively State Farm Mutual Cases). For each person provide their last known address and phone number, activities in the claim, their position at the time of the claim, their current affiliation with Defendant, and whether they were disciplined, admonished, or otherwise given any negative feedback for their role in the said claim.

**INTERROGATORY NO. 18**: Identify all documents and exhibits produced by either party in State Farm Mutual Cases.

**INTERROGATORY NO. 19**: For every claim described in the State Farm Mutual Cases, identify all actions taken by Defendant to prevent the reoccurrence of the actions leading to Defendant loosing [sic] the said cases including, but not limited to, instructions to employees, agents, and agents' employees; and documents (including, but not limited to instructional materials, memos, videos, technological changes, and the like).

*See* docket number 24-4 at 77-79.

In response to Interrogatory Number 17, State Farm objected as follows:

**ANSWER: OBJECTION:** The interrogatory seeks information that is not relevant to any issue in the case, and not likely to lead to the discovery of admissible evidence. The request is unduly overbroad and burdensome seeking information about cases that took place decades ago in states other than Iowa. The requested information may invade the privacy of Defendant's policyholders. Further, the information requested may contain confidential, proprietary, and trade secret information that does not pertain to or relate to the subject litigation. In addition, the requested information may be protected by the attorney-client privilege and/or attorney work product doctrines.

8

*See* docket number 24-4 at 77. In response to Interrogatories 18 and 19, State Farm directed Marook to "[s]ee Defendant's objections to Interrogatory No. 17."

In paragraph 14 of Marook's second request for production of documents, she asks State Farm to produce "[a]ny documents referred to in the Interrogatories propounded to the Defendant or in the Answers thereto." *See* docket number 24-4 at 80. In response, State Farm refers to the objections which it previously made to Marook's interrogatories.

The three cases referred to by Marook in Interrogatory No. 17 involve fact patterns similar to that found in the instant action. In *State Farm Mut. Auto. Ins. Co. v. Bockhorst*, 453 F.2d 533 (10th Cir. 1972), the insurance policy lapsed as a result of the insured's failure to pay premiums due. Approximately six weeks later, after an accident resulting in the death of a pedestrian, the insured submitted a check for the premium and asked that the policy be reinstated. A notice of reinstatement was issued automatically by State Farm's computer, retroactive to 12:01 a.m. on the day of the accident. The trial court found that by issuing the retroactively-reinstated policy, State Farm "voluntarily and intentionally waived its right not to renew the insurance contract." *Id.* at 535. The Tenth Circuit Court of Appeals affirmed, finding that "State Farm was in full possession of all relevant information concerning Bockhorst's accident before the notice of reinstatement was actually issued." *Id.* at 536. The Court concluded that State Farm could not take refuge in the fact that the computer which automatically reinstated the policy did not have information regarding the accident. "One hand of the company must be charged with what the other hand knows and does." *Id.*

In *Van Hulle v. State Farm Mut. Auto. Ins. Co.*, 254 N.E.2d 457 (Ill. 1970), the Court also addressed the issue of "whether certain conduct on the part of an insurer and its agents waives the lapse of an insurance policy." *Id.* at 459. Again, the policy had lapsed due to nonpayment of the premium. A check for the premium was found in the wreckage of the accident and mailed to State Farm. The next day, the insurance agent "called the claim office and advised the claim officer of the accident and the tendering of

9

the check." Later, the insured told the insurance agent that if the claim was not to be covered, then he wanted his check returned. The insurance agent also wrote to State Farm and confirmed the relevant details. State Farm initially cashed the check, but three days later mailed the insured "a refund check and a letter explaining that the policy could not be reinstated." *Id.* at 460. The Illinois Supreme Court concluded that based on all of the circumstances presented, State Farm had waived its right to deny reinstatement of the policy.

In *State Farm Mut. Auto. Ins. Co. v. Anderson*, 318 S.2d 687 (Ala. 1975), the policy expired for nonpayment of the premium. Two days after an accident, State Farm received an envelope postmarked one day after the accident. The envelope contained a check for the premium, which was dated three days prior to the accident. State Farm cashed the check and sent the insured a new policy effective on the date that the payment was received. The Alabama Supreme Court concluded that acceptance of the premium by State Farm constituted "a waiver of the delinquency of payment and amounted to an intentional relinquishment of any right which State Farm might have had to the denial of coverage under its policy." *Id.* at 689.

### b. *Financial Information*

Marook also seeks more detailed information regarding State Farm's financial condition. On April 8, 2009, Marook's counsel took the deposition of Meghan Quinn, a State Farm employee. Ms. Quinn was shown a one-page document (Exhibit 17), entitled "2007 Annual Report to State Farm Mutual Policyholders."[16] Ms. Quinn was also shown a similar document pertaining to 2008 (Exhibit 18).[17] Marook's counsel then asked Ms. Quinn: "Do you recognize those to be State Farm-issued documents?" State Farm's attorney objected on the grounds that

---

[16] *See* docket number 24-4 at 14.

[17] *See* docket number 24-4 at 15.

10

> under Iowa Code Chapter 668A, until [a] prima facie showing
> with regard to a ground to submit a punitive damage case to a
> jury is established, which you have not, then any questioning
> about any document or information that this or any witness has
> about the financial well-being of State Farm, or these exhibits
> in particular, is not allowed. And I would instruct the witness
> not to answer.

*See* Meghan Quinn Dep. 84:1-8 (docket number 24-4 at 58). Similarly, State Farm's attorney told Marook's attorney that he would not permit Jerry Brimeyer and Conall Murphy to answer any questions regarding Exhibits 17 and 18.[18]

### 2. *Analysis*

The familiar standard governing the scope of discovery generally is found in FEDERAL RULE OF CIVIL PROCEDURE 26(b)(1): "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Accordingly, the Court must determine whether the information sought by Marook regarding the prior State Farm cases is relevant to any of her claims or State Farm's defenses. In a discovery context, relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also Davis v. Union Pacific R.R. Co.*, 2008 WL 3992761 (E.D. Ark.) at *2 ("a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."); *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) (same).

"Discovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Rollscreen Co. v. Pella Products*, 145 F.R.D. 92, 94 (S.D. Iowa 1992). While the

---

[18] *See* Jerry Brimeyer Dep. 44:21-24 (docket number 24-4 at 22); and Conall Murphy Dep. 29:10-14 (docket number 24-4 at 33).

11

standard to be applied is one of liberality, however, "relevancy under Rule 26 is not without bounds." *Bredemus v. International Paper Co.*, 252 F.R.D. 529, 533 (D. Minn. 2008). *See also Oppenheimer Fund*, 437 U.S. at 351 ("At the same time, 'discovery, like all matters of procedure, has ultimate and necessary boundaries.'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

Generally, the party resisting production of the requested information bears the burden of establishing lack of relevancy. *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

> The party must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to FED. R. CIV. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Id.* (quoting *Burke v. New York City Police Department*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)). "However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Cunningham v. Standard Fire Ins. Co.*, 2008 WL 2902621 (D. Colo.) at *1.

### a. Prior State Farm Cases

Here, Marook seeks extensive discovery regarding claims which were adjusted decades ago. The accidents which give rise to the claims occurred between 35 and 44 years ago. Marook asks State Farm to identify "all employees, agents, agents' employees, counsel and parties involved in the claims." For each person identified, Marook asks State Farm to "provide their last known address and phone number, activities in the claim, their position at the time of the claim, their current affiliation with Defendant, and whether they were disciplined, admonished, or otherwise given any negative feedback for their role in the said claim." Furthermore, Marook asks State Farm to provide information regarding actions taken "to prevent the reoccurrence of the actions leading to Defendant loosing [*sic*]

said cases." The information requested includes any instructions given to employees, agents, and agents' employees, together with any documents. Given the extraordinary breadth of the discovery request and its lack of apparent relevance, Marook has the burden of showing its relevancy to this case. *Id.*

Marook argues that the requested information is relevant for four reasons: first, the evidence refutes State Farm's claim that the reinstatement notice sent to Marook was a "clerical error"; second, the earlier cases show that the reinstatement notice was issued "because of an intentional decision not to fix a flaw in its system rather than inadvertence"; third, the prior cases show that State Farm "knew or should have known it had waived any applicable policy defenses by generating the Reinstatement Notice," thereby supporting Marook's claim of bad faith; and fourth, the prior cases are admissible to prove State Farm's "intent to injure Plaintiff and a lack of mistake or accident." State Farm argues, on the other hand, that the earlier cases are "factually distinguishable from the instant case," and are therefore not relevant.

State Farm also argues that the requested information is "overly burdensome to produce." As the party resisting production, State Farm must show that production of the requested discovery would be overly burdensome. *St. Paul Reinsurance Co.*, 198 F.R.D. at 511. Since the actions about which discovery is sought occurred between 35 and 44 years ago, State Farm opines that "[t]he employees who were involved in those cases are likely long gone from the company." State Farm argues that "[i]t would require a Herculean effort to locate any information regarding these cases that still exist and to determine the identity of and track down any persons that were involved." In its brief, State Farm suggests that "[t]he documents requested are outside of the period of time in which State Farm retains records."[19] State Farm argues that even if the files still exist and

---

[19] *See* State Farm's Brief in Resistance to Motion to Compel at 6 n.4 (docket number 29-2 at 6).

13

can be located, it would be "put to the extraordinary task" of attempting to locate the insureds and their attorneys in order to obtain appropriate authority to release information.

The Court believes that the extensive discovery requested by Marook regarding the earlier State Farm cases has little or no relevance to the issues presented in this case. Marook apparently concedes that the outcome of the earlier State Farm cases will not control the outcome here.[20] Not only are the facts in the earlier cases distinguishable from those in the instant action, the cases were determined under the law which existed at that time in Kansas, Illinois, and Alabama. Marook apparently seeks the information to establish that State Farm acted intentionally and in bad faith by sending a reinstatement notice and subsequently denying coverage. This argument has two flaws: first, the information sought by Marook (the identity of employees, agents, agents' employees, etc. from 40 years ago) has little or no relevance to the adjustment of her claim; and second, there is no evidence that any of the State Farm employees who were involved in this case had any prior knowledge of what transpired 40 years ago. It may be that Marook is entitled to detailed discovery regarding State Farm's current practices for reinstatement of insurance policies following an accident, but that is not what is sought to be discovered here.

In addition, the Court is convinced that production of the requested information would be overly burdensome. It is highly unlikely that any of State Farm's employees who handled the Van Hulle claim in 1965 remain with the company today. Identifying and locating those employees, the agents, the agents' employees, counsel, and parties would be an extraordinary undertaking. Determining the addresses, phone numbers, and other information sought by Marook would also be very difficult. Given the marginal relevance of the information sought regarding the 40-year-old actions, and the unduly burdensome

---

[20] Marook suggests that the Court admit the legal opinions in the earlier cases as evidence at the time of trial, but give the jury a limiting instruction that "they are not in themselves dispositive of the case at bar." *See* Marook's Brief in Support of Motion to Compel at 9-10 (docket number 24-3 at 9-10).

effort required to obtain the information, the Court concludes that Marook's motion to compel in this regard should be denied. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990) ("Even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.") (cited with approval in *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999)).

### b. *Financial Information*

At the outset, the Court notes that the two one-page reports (Exhibits 17 and 18) proffered by Marook at Quinn's deposition can be found on State Farm's website.[21] Information regarding State Farm's financial condition is hardly confidential, and it is difficult for the Court to determine why State Farm is concerned about discovery in that regard. On the other hand, it can be assumed that State Farm has the wherewithal to pay any punitive damages which are likely to be imposed in this case.[22] Accordingly, the parties' spat over discovery regarding State Farm's financial condition would seem to the Court to be much ado about nothing. Nonetheless, the Court will address the legal issue involved.

In resisting any discovery regarding its financial condition, State Farm relies on Iowa Code Section 668A.1(3), which states:

> The mere allegation or assertion of a claim for punitive damages shall not form the basis for discovery of the wealth or ability to respond in damages on behalf of the party from whom punitive damages are claimed until such time as the claimant has established that sufficient admissible evidence exists to support a prima facie case establishing the requirements of subsection 1, paragraph "a".

---

[21] *See* http://www.State Farm.com/about/media/annualrep.asp

[22] According to its 2008 annual report, State Farm has over $92 billion in assets, including over $50 billion in surplus.

Iowa Code § 668A.1(3). Marook concedes that she must establish a *prima facie* case for punitive damages before she is entitled to compel discovery regarding State Farm's financial condition. Marook argues that she has made that *prima facie* showing here. Both parties briefed this issue in conjunction with Marook's separate motion asking that the Court "declare that the Plaintiff has made a prima facia [*sic*] case for exemplary damages and order the Defendant to provide to Plaintiff information about Defendant's financial condition as requested by Plaintiff."[23]

In 1988, the Iowa Supreme Court first recognized a cause of action in tort against an insurance carrier for bad faith conduct relating to a claim made by its insured. *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790 (Iowa 1988). To establish a claim of bad faith, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 794 (adopting the test established in *Anderson v. Continental Ins. Co.*, 271 N.W.2d 368, 376 (Wis. 1978)). To recover punitive damages on her claim of bad faith, Marook must prove (1) State Farm "had no reasonable basis" for denying her claim, and (2) State Farm "knew or had reason to know that its denial or refusal was without reasonable basis." *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). The first element is an objective one; the second element is subjective. *Id.* "Where a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Dolan*, 431 N.W.2d at 794. *See also Seastrom v. Farm Bureau Life Ins. Co.*, 601 N.W.2d 339, 346 (Iowa 1999) (same).

In the instant action, Marook instructed her State Farm agent on August 16 to discontinue automatic withdrawal of premium payments from her bank account. Accordingly, the premium due on August 23 was not paid. As a consequence of her nonpayment of the premium, State Farm notified Marook that the policy would terminate

---

[23] *See* Plaintiff's Motion for Finding a Prima Facia [*sic*] Case of Exemplary Damages (docket number 22).

on September 12. Because Marook did not pay the premium prior to that date, the policy was cancelled.

The fighting issue in this case is not whether the policy terminated on September 12, but whether State Farm waived its right to deny coverage as a consequence of its actions following the accident. Immediately following the accident, State Farm agent Chad Johnson told the investigating officer that Marook had insurance coverage with State Farm. (Although after checking the records more carefully, Johnson called Marook a couple of hours later and informed her that the policy had expired and there was no coverage.) Marook paid two months premium immediately after the accident and State Farm sent a notice of reinstatement 13 days later, stating that "[y]our policy is hereby reinstated," effective at 12:01 AM on the day of the accident. After investigating the matter further, however, State Farm notified Marook two weeks later that it was denying coverage. State Farm subsequently tendered a refund of the premium paid for the day of the accident.

The issue before the Court at this time is *not* whether State Farm in fact waived its right to deny coverage under the circumstances presented here. Rather, the issue is whether Marook's claim for coverage is "fairly debatable," thereby establishing a "reasonable basis" for State Farm's denial of the claim.

> A reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law. A claim is "fairly debatable" when it is open to dispute on any logical basis. Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable.

*Bellville*, 702 N.W.2d at 473 (citations omitted). Even if State Farm is ultimately found to have waived its right to deny coverage, thereby allowing Marook to recover on her contract claim, that fact is not sufficient by itself to establish the first element of a bad faith claim. *Id*. "The focus is on the existence of a debatable issue, not on which party was correct." *Id*.

The Court concludes that there is an objectively reasonable basis for State Farm to deny coverage in this case. State Farm had evidence that the policy had been cancelled prior to the accident due to nonpayment of the premium. Accordingly, no coverage was provided to Marook unless State Farm waived its right to deny coverage by its subsequent actions. For these purposes, the Court need not determine whether State Farm's actions (the agent telling the officer that coverage was in force, the agent accepting payment of the premium, the issuance of a notice of reinstatement, etc.) *actually* constituted a waiver of State Farm's defenses. Rather, it is sufficient to defeat a bad faith claim if State Farm's position that it did not waive any defenses is "fairly debatable." The Court concludes that reasonable minds can differ on the issue of whether State Farm intentionally relinquished its right to deny coverage.[24] That is, Marook may or may not recover on her contract claim. Because that issue is fairly debatable, however, Marook has not established a *prima facie* claim for bad faith. Therefore, her motion to compel discovery regarding State Farm's financial condition must be denied.

### B. Motion for Finding of Prima Facia [sic] Case of Exemplary Damages

In her motion for finding of *prima facie* case of exemplary damages, Marook asks that the Court "declare that the Plaintiff has made a prima facia [sic] case for exemplary damages and order the Defendant to provide to Plaintiff information about Defendant's financial condition as requested by Plaintiff." This issue was also raised by Marook in her motion to compel, and was addressed by the Court above. Accordingly, no separate analysis is required. For the reasons set forth above, the Court finds that the motion for finding of *prima facie* case of exemplary damages should be denied.

---

[24] "The essential elements of a waiver are the existence of a right, knowledge, actual or constructive, and an intention to relinquish such right." *Scheetz v. IMT Ins. Co.*, 324 N.W.2d 302, 304 (Iowa 1982).

## V. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Motion for Finding of Prima Facia [*sic*] Case of Exemplary Damages (docket number 22) filed by the Plaintiff on May 29, 2009 is hereby **DENIED**.

2. The Motion to Compel (docket number 24) filed by the Plaintiff on May 29, 2009 is hereby **DENIED**.

DATED this 10th day of August, 2009.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA